# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-3809

———————

Janine A. Calvin,     *

        *

      Appellant,     *

        *    Appeal from the United States

    v.               *    District Court for the

        *    Western District of Missouri.

Yellow Freight System, Inc.,     *

        *        [PUBLISHED]

      Appellee.     *

———————

Submitted: May 12, 2000
Filed: July 20, 2000

———————

Before BOWMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.

———————

PER CURIAM.

      Janine A. Calvin appeals from the order of the District Court[2] granting summary judgment to Calvin's employer, Yellow Freight System, Inc., in Calvin's employment-discrimination suit under Title VII and 42 U.S.C. § 1981. Calvin, a part-time employee who is black, claims that Yellow Freight's decision to offer a full-time job to another

———————

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

part-time employee, a white, was the product of racial animus. Yellow Freight offered legitimate, nondiscriminatory reasons for its decision. The District Court determined that Calvin had failed to produce evidence to show pretext.

For reversal, Calvin argues that the District Court overlooked genuine issues of material fact and contends that she therefore is entitled to a trial on her claim that she was denied the full-time job because of her race. Having reviewed the case, we agree with the District Court's determination that Calvin failed to come forward with evidence to show that Yellow Freight's articulated reasons for selecting a person other than Calvin for the full-time job were a pretext for racial discrimination. No error of law appears, and an opinion by this Court would add nothing of substance to the well-reasoned order of the District Court. Accordingly, without further discussion, the decision of the District Court is

AFFIRMED. See 8th Cir. R. 47B.

BATAILLON, District Judge, dissenting.

For the reasons set forth herein, I respectfully dissent.

Plaintiff, a black female, filed this action in the district court alleging that the defendant hired a full-time employee, a white male, for a clerk position. Plaintiff contends that she was more qualified and was not hired because she was black, in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), in violation of R.S. Mo. § 213.111.2, and in violation of 42 U.S.C. § 1981. The defendant filed a motion for summary judgment. The district court granted the motion and the plaintiff appeals to this Court.

## Facts

The plaintiff, who worked for the defendant, had the job title of "casual employee." A "casual employee" is one whom the defendant calls to fill in for an absent full-time employee or to supplement during busy time periods. Casual employees have no seniority rights and no rights of employment. Casual workers are not required to report to work when called. The defendant is a transportation company located in Kansas City, Missouri. The clerical workers are unionized and adhere to a collective bargaining agreement. The defendant is under no obligation to offer permanent jobs to casual employees, although on at least two occasions during plaintiff's employment, casual employees received offers of permanent positions.

On October 5, 1993, plaintiff applied to be a casual worker and began work on October 11. In August 1997 a full-time regular position came open. The position was initially offered to a casual worker by the name of Cindy Charmley, a white female. She declined. The position was then offered to Brad Jaeger, a white male, who accepted. He had been a casual worker since May 1995. The position was not advertised, the criteria for promotion were not published, and no interview process occurred.

Plaintiff was not offered the position. When she inquired about why it was not offered to her, she contends that Mike Ladd (hereinafter "Ladd"), the office manager, told her that she had not worked enough when she was called during the winter months. Plaintiff argues that she was more qualified and should have been hired. She contends that she had been a casual employee longer than Jaeger, had more formal education, and that she was qualified to perform seven different jobs while Jaeger could only perform six of them. Ladd was aware that plaintiff was interested in the full-time position.

Defendant first contends that plaintiff was unavailable during the winter months. The records show that from December 1995 to April 1996, plaintiff was asked to work 24 times and accepted on 3. From December 1996 to April 1997, Jaeger was asked to work 24 times and accepted on 17. Plaintiff was called 24 times and accepted on six during that time period. Jaeger was then moved up higher on the "call list." From December 1997 through April 1998 Jaeger was called 56 times and worked 48 of those times. Plaintiff was not counseled for failing to come in more often nor was she told that her name had been placed lower on the call list. It should be noted that the records do not indicate whether the plaintiff declined to come to work or whether the defendant was unable to reach her. Plaintiff disputes the contentions of the defendant and asserts that she was in fact available to work the winter months.

Defendant next contends that Jaeger's qualifications to perform a particular clerk position (hereinafter referred to as "OS & D") outbound work exceeded that of the plaintiff. Plaintiff disagrees and contends that she could perform both outbound and inbound OS & D work. In any event plaintiff's ability or inability to do this job was evidently not a reason originally given to her as to why she did not receive the job. Further, Jaeger in deposition testimony stated that this particular part of the position only took 5 to 10 percent of his time.

The evidence also shows that Jaeger was counseled for being tardy to work, apparently on multiple occasions. According to Ladd, plaintiff was never disciplined for anything at work, including the call-in issue. Ladd told plaintiff that she did not receive a full-time employment offer because she had not been available for work during the previous two winters. Ladd also admitted that he never told plaintiff that she had been dropped down on the call sheet because of her unavailability or that she had "fallen from grace."

The plaintiff offers some figures that she believes show a racial bias in employment. The plaintiff states that out of 30 full-time clerical employees, only one is black. Out of 11 casual office/clerical employees, only one is black. In addition,

-4-

Ladd has not hired a black office worker in almost 14 years. The district court pointed out that this evidence is not supported in a manner prescribed in Fed. R. Civ. P. 56.

## District Court

The district court was presented with a motion for summary judgment filed by the defendant. The district court first found that plaintiff had met her prima facie burden of race discrimination. *Widow v. District #111 Otoe County School*, 147 F.3d 726, 729 (8th Cir. 1998) (plaintiff must establish that: (1) she is a member of a racial minority; (2) she was qualified but did not receive the job; (3) the job was awarded to a non-minority). The district court then shifted the burden to the defendant to show a nondiscriminatory reason for the employment decision. The district court found that the defendant had articulated a nondiscriminatory reason for the employment decision by contending that it hired Jaeger because of his greater commitment to working when called and because he was more qualified.

The district court then focused on "pretext" for discrimination. The district court gave the defendant an inference that race was not a factor, because Ladd was the person who hired the plaintiff in the first place. The courts have held that it is unlikely that a person would hire a minority and then refuse to promote or decide to fire that same person based on of the minority status. *Herr v. Airborne Freight Corp.,* 130 F.3d 359, 363 (8th Cir. 1997). The district court then found that there was no evidence of pretext. The court further found that the defendant was entitled to weigh Jaeger's tardiness with plaintiff's not working as often when called, and that this factor did not relate to discriminatory motive. The court concluded that plaintiff was unable to cast doubt on the justifications offered by the defendant, and therefore, the subjective criteria that may have been used by the defendant in making the hiring decision did not create a jury question.

With regard to the statistical information, the district court noted that plaintiff failed to offer any evidence about the racial composition of the pool of applicants in terms of any racial data. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 650-51 (1989) (recruitment pool data required).

**Analysis**

This Court reviews a district court's grant of summary judgment de novo. *Gutridge v. Clure,* 153 F.3d 898, 900 (8th Cir. 1998). This Court must affirm the grant of summary judgment by the district court if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether the moving party is entitled to summary judgment, the court must resolve all controversies in favor of the nonmoving party, take the nonmovant's evidence as true, and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment should seldom be used in employment discrimination cases," because discrimination cases often depend on inferences instead of direct evidence. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994).

This case is based on circumstantial evidence, and thus the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), applies. *See, e.g., Chock v. Northwest Airlines, Inc*., 113 F.3d 861, 863 (8th Cir. 1997). Plaintiff has the burden of showing that she meets the prima facie case of race discrimination. Defendant has conceded for purposes of the summary judgment motion that plaintiff has met her burden of establishing a prima facie case of racial discrimination. The burden thus shifts to the defendant to articulate a nondiscriminatory reason for its action. *Id.* In the case at hand, defendant has stated that the plaintiff was not hired because of the number of times she was unable to work

during the winter months. I agree with the district court's findings that the defendant has met its burden. The burden of production then shifts back to the plaintiff, and she must show that the reason suggested by the defendant is merely a pretext for discrimination. *Id.* In order for the plaintiff to defeat the summary judgment motion, she must show that the reasons offered were pretextual and that a reasonable fact-finder could find that she was discharged because of intentional race discrimination. *Rivers-Frison v. Southeast Mo. Community Treatment Ctr.*, 133 F.3d 616, 621 (8th Cir. 1998).

In the very recent case of *Reeves v. Sanderson Plumbing Products, Inc.,* 2000 WL 743663 (U.S. June 12, 2000), the Court clarified the evidence needed by plaintiffs who are attempting to prove intentional discrimination through circumstantial evidence.[3] Although the *Reeves* case dealt with sufficiency of the evidence in an age discrimination case to sustain a jury verdict, it is instructive in the case at hand.

In *Reeves* the employee made out a prima facie case of age discrimination. The employer then offered a legitimate reason for firing the employee, i.e., failure to maintain accurate attendance records. The employee introduced evidence that rebutted the employer's proffered reason for the firing and additionally offered some evidence of age-based animus. On appeal the circuit court held that plaintiff had not proved that age motivated the defendant's employment decision. *Id.* at 4.

The Supreme Court granted certiorari. The Court found that the employee cast doubt on the employer's proffered reasons for the termination. The Court further found that the court of appeals had misconstrued the evidentiary burden. The Court stated: "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 7. The Court went on to note that a

[3]The District Court did not have the benefit of the *Reeves* case at the time its order was written.

-7-

showing by the plaintiff will not always be adequate to sustain a jury's finding such as where the evidence shows clearly that no discrimination existed or that the employer had other nondiscriminatory reasons for the employment decision. *Id.* As stated in *Reeves*: "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Id.* at 9.

I am of the opinion that substantial, conflicting evidence exists to submit the facts of this case to a jury for determination. Of particular concern is the fact that defendant relied on vague and subjective criteria, as set forth below. The criteria used by Ladd in making his promotion decision were not published, were not posted, and were clearly, in most respects, subjective. No interview process occurred.

In Ladd's deposition he was asked to explain the portion of an opinion letter which was a position paper issued by defendant's counsel to the EEOC and later incorporated into defendant's answers to interrogatories. The third paragraph on page 5 stated: "[B]ased upon job knowledge, productivity, quality of work, availability, work habits, and last, length of service as a casual, Ladd considered Cindy Charmley the best candidate at that time, August, 1997." When questioned, Ladd had difficulty ranking these criteria in order of importance but gave job knowledge an edge over the other criteria. He was able to quantify the first criterion, job knowledge, which lists the qualifications and tasks for each casual employee. He ranked the second criterion as "productivity," and said that could be measured, but he did not do so. The third criterion for selection, "quality of work," could also not be quantified, as he did not keep track of errors committed by the casuals. He did keep track of the next criterion, "availability," although he chose to use winter numbers rather than year-round numbers when hiring Jaeger for the full-time position. In that regard, Ladd was asked the following:

Q:    Did you do any compilation of her availability year round - -

A:    No.

Q:    - - in '96 or '97?

A:    No, I did not.

Q:    Do you have a sense of what that would have shown?

A:    Probably that she was about the same as Cindy or Brad.

Q:    Did she seem to work more in the summer months then?

A:    Oh, yes.

(Ladd Depo., at p. 52.)   There is no justification offered as to why Ladd chose winter numbers rather than year-round ones.  The next criterion was "work habits."  That also does not appear to be in any way objectively documented.   The last criterion, "length of service,"  Ladd considered to be a "tiebreaker,"  although he again said it was difficult to rank these criteria.

Ladd cannot clearly articulate which criteria he relied on and how much weight was given to each criteria.  This court has held that subjective criteria for promotions allow the employer to sabotage the case of a plaintiff and to mask discrimination. *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998).  Ladd admitted that he had no written or published criteria to rely on in making his decision.

Additional material facts exist that require submitting this case to the jury.  It appears that Ladd may have changed his explanation from the time of his decision to hire Jaeger until his deposition was taken, as to why he did not hire plaintiff for the permanent position.  Plaintiff contends that she was told that her lack of availability during the winter months and the fact that she had no contractual right to employment caused her to not receive the promotion.  Later, it appears that her qualifications with regard to OS & D work were added to the list of reasons for not hiring her.  Plaintiff testified that she was fully qualified to do the OS & D work, and Jaeger testified that work was a minimal part of his job. The defendant's business record shows that plaintiff is qualified for the inbound OS & D jobs.  Ladd states that the record is

incorrect. Plaintiff submitted an affidavit in support of her opposition to this motion for summary judgment. In her affidavit she swears that she was knowledgeable in both inbound and outbound OS & D freight.

Again, with regard to her qualifications, plaintiff contends that she had more experience in the freight industry than Jaeger. She worked at Roadway Express as a billing clerk from 1988 to 1992. Jaeger had one year and one month of prior freight company experience. It also appears from the deposition testimony of plaintiff that she has more formal education than does Jaeger. She lacks about 15 hours for an associate's degree. Further, according to defendant's business records, plaintiff was qualified to do seven desks of work, while Jaeger could only perform six desks of work. Chuck Wright, a full-time office clerk who has been with the defendant since 1972, testified in his deposition that plaintiff and Jaeger were equally qualified. The trier of fact should be permitted to make these factual and credibility determinations with regard to the respective qualifications of the plaintiff and Jaeger.

In addition, plaintiff had one year and five months more experience with the defendant than did Jaeger. Plaintiff contends that the hiring decisions were made on the basis of seniority. She was clearly senior to Jaeger. With regard to the length of service issue, defendant agrees that,

> For the past several years, as regular positions became available, the selection was made from the pool of currently working casual general clerks. The office manager determined and selected the best qualified employee to fill the need, regardless of whether others may have started their casual employment at an earlier date.

(Defendant's suggestions in support of summary judgment, page 3; Exhibit B, Ladd Deposition, p. 6; Exhibit A, Ladd Affidavit ¶ 9.)

However, Patricia Ann Simpson, an employee of the defendant since 1978, in her deposition stated:

Q.    Let's start off with some just general questions about hiring of employees there at KCM.  For casual employees, have you seen whether or not length of service relates to who is hired as a full-time clerk over the years that you have been there?

A:   Well, it used to be that whoever was there first generally was hired first and then down the line or whatever.

Q:   Okay.

A:    But I think changes - - I mean, well, they do pretty much whatever they want to do, I guess.

(Patricia Simpson Depo., pp. 5, 9.)  The testimony of plaintiff and Simpson create a question of material fact to be decided by the trier of fact.

Finally, Ladd also admitted that he had not hired a black office worker since November 20, 1985.  This evidence vitiates any inference the district court gave to the defendant that race was not a factor in the hiring decision. Whether the defendant was in fact motivated to promote a white person over a black person is a question for the finder of fact.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993).

**Conclusion**

In my opinion, material disputes exist in this case with regard to pretext, particularly in light of the recent *Reeves* case.  Plaintiff contends that the reasons given by the defendant are false and misleading.  Plaintiff has proferred sufficient evidence to meet her burden of opposing defendant's motion for summary judgment and should be entitled to a trial on the merits.

-11-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.